UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DOUGLAS GOONEWARDENA

                              Plaintiff                   COMPLAINT

**18 CV 5405**
       -against-                         CIVIL ACTION NO.

METLIFE INC., and, STEVEN ALBERT KANDARIAN, CEO     JURY TRIAL
and, PAULA BERRY, senior acct. rep.               DEMANDED

                               Defendants

------------------------------------------------------------X

### Preliminary Statement

1. Plaintiff's Complaint is based on Civil RICO 18 U.S.C.§§ 1961- 1968, Mail and Wire Fraud 18 U.S.C. §§ 1341 & 1343, Fraud, Fraudulent Inducement, Unjust Enrichment, Duty of loyalty, Negligent Misrepresentation, Breach of contract, Garden Variety Emotional Distress and Fraudulent Intent.

2. RICO authorizes a private right of action for treble damages by a "person injured in his business or property by reason of a violation of section 1962 of [title 18]." 18 U.S.C § 1964 RICO defines racketeering activity to include mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. 1343. See U.S.C. § 1961 (1).

3. Plaintiff is an 88 yr. old retired individual.

4. Plaintiff signed up for life insurance policy with MetLife in 1996. A representative came to Merrill Lynch and sold an individual policy to plaintiff. Plaintiff was told he only has to pay $17.41 a month for the life of the policy. The monthly policy premium ballooned to $150.75 a month for a $15,000.00 policy. Plaintiff never entered into contract with MetLife to pay

$150.75 a month. Metlife cancelled the policy without notice after finding out plaintiff's age. Plaintiff kept paying$150.75 month and they kept cashing plaintiff's checks.

    5. Plaintiff realized that Met Life is engaging in a fraud when his son looked at the contract and paperwork.

    6. The defendants breach the contract when it increased the premium to $150.75/month without plaintiff's consent.

### Jurisdiction and Venue

    7. This court has subject matter jurisdiction under 28 U.S.C. 1332 because of the parties complete diversity. Plaintiff is claiming more than $75,000.00 in damages.

    8. Defendants conduct business in the New York city and therefore, personal jurisdiction is established.

    9. Venue is proper pursuant to 28 U.S.C. § 1391 (b).

    10. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

### Parties

    11. Plaintiff is a natural person residing at 247-34A 77 Cres, Bellerose, NY 11426.

    12. Mr. Steven Albert Kandarian's address is: 200 Park Avenue New York, NY 10166.

    13. MetLife, Inc. address is: 200 Park Avenue New York, NY 10166.

    **14.** Paula Berry's address is: 177 South Common Dr. Aurora, IL, 60504.

### Factual Allegations

    15. Plaintiff signed up for life insurance policy with MetLife in 1996. A representative

came to Merrill Lynch and sold the policy to plaintiff. Plaintiff was told he only has to pay $17.14 a month for the life of the policy. The monthly policy premium ballooned to $150.75 a month for a $15,000.00 policy. Plaintiff never entered into contract with MetLife to pay $150.75 a month.

16. The defendants cancelled the policy in 2017 while plaintiff was paying $150.75month.

17. The decision to cancel the policy was made by Paula Berry in Illinois. Therefore, diversity is established.

18. Plaintiff's son, Prasanna Goonewardena whoi has power of attorney wrote a letter to Mr. Kandarian on February 6, 2017. ( Exhibit A.) Mr. Kandarian electronically mailed the letter to Paula Berry. Ms. Berry sent a letter to plaintiff from Illinois on March 27, 2017. (Exhibit B.) Ms. Berry had indicated to plaintiff's son that the policy is cancelled and there is nothing she can do. However, MetLife has been cashing plaintiff's monthly premium check that plaintiff has been sending. Exhibit C is the contract.

### First Claim for Relief:
(Civil RICO 18 U.S.C. §§ 1961-1968)

19. Plaintiff hereby restates, realleges, and incorporates herein by reference paragraphs 1 through 18 as if set forth fully in this Count.

20. Defendants Kandarian and Paula Berry are "persons" 18 U.S.C. § 1961 (3).

21. MetLife is an "enterprise" as defined in 18 U.S.C. § 1961(4).

22. MetLife engages in interstate commerce. Upon information and belief, Met Life has done this to more than one person.

23. The defendants electronically cashed plaintiff's payments that was sent to Met Life in Pennsylvania.

24. Defendants committed mail and wire fraud when Ms. Berry sent the letter to plaintiff by mail indicating that "… billing increases have occurred throughout the certificate based on aging, in five year age brackets." [*sic*] However, plaintiff never agreed to such increase when he signed the policy contract. (See Exhibit C policy contract.)See *Sykes v. Harris and Associates LLC.,* 13-2742-CV, 13-2747-CV, 13-2748-CV (2nd Cir 2015); *Zimmerman v. Poly Prep country Day Sch.* 09 CV 4586 (E.D.N.Y. Aug. 28, 2012).

25. After collecting the payments from plaintiff fraudulently, defendants entered financial information in the computer and sent electronically to Mr. Kandarian in New York. This is mail and wire fraud.

26. Upon information and belief, MetLife employees, such as, Ms. Berry gets a bonus at the end of the year for committing fraud that brings revenues to MetLife. Also they file fraudulently obtained revenues from plaintiff and others with the IRS and New York  State Taxation Department electronically. This is wire fraud.

27. By filing such returns by mail that fraudulently obtained from plaintiff and others they committed mail fraud. 18 U.S.C. § 1341.

28. By filing such returns by electronically that fraudulently obtained from plaintiff and others they committed wire fraud 18 U.S.C. § 1343.

### *Patten of Racketeering Activity-Mail and Wire Fraud*

29. Defendants, acting individually and as part of the Enterprise, have engaged, directly or indirectly, a pattern of racketeering activity, as described above and below, in violation of 18 U.S.C. § 1962 (c) & (d).

A. Defendants, acting individually and as part of the enterprise, have devised a scheme to defraud and to obtain money or property by means of false or fraudulent pretenses and representations. The scheme includes but not limited to:

i. Each of the tens, if not hundreds, of thousands of uses of the mails and wires in connection with defendants' schemes to defraud, spaning a period of no fewer than six years, constitutes a separate instance of mail and/or wire fraud within the meaning of 18 U.S.C. §§ 1341 and 1343, and thus is also a predicate act, which taken together, constitute "a pattern of racketeering activity" within the meaning of 18 U.S.C. §§ 1961 and 1962.

***Relationship of Pattern of Racketeering Activity to Enterprise***

30. As described, the goal of defendants' Enterprise is to boost revenue by fraudulent.

31. Upon information and belief, the named defendants have done this scam to numerous other policy holders. Now pattern of racketeering has established.

32. The pattern of racketeering activity described above is integral to defendants' scheme. without engaging in mail and wire fraud, defendants would be unable to obtain ruling they seek.

33. Each defendant, individually and as a member of the enterprise, has conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through the pattern of racketeering above. Accordingly each defendant has violated 18 U.S.C § 1962 (c)

34. Moreover, each defendant, has agreed and conspired to violate the provisions of 18 U.S.C. § 1962 (c), including the numerous predicated acts of mail and wire fraud described above, and has thus violated 18 U.S.C. § 1962 (d).

### Second Claim for Relief:
### Unjust Enrichment

35. Plaintiff hereby restates, realleges, and incorporates herein by reference paragraphs 1 through 34 as if set forth fully in this Count.

36. Defendants main goal was to collect as much money illegally as they can from the plaintiff and cancelled the policy when plaintiff gets old (a liability).

37. The plaintiff was hurt financially because of the defendants' scam.

### Third Claim for Relief:
### Fraud

38. Plaintiff hereby restates, realleges, and incorporates herein by reference paragraphs 1 through 37 as if set forth fully in this Count.

39. Upon information and belief, defendants scam started by collaboration by several individuals: Mr. Kandarian and Paula Berry and other MetLife executives and representatives.

40. Defendants main object was to scam plaintiff and collect money that they are not entitled to.

41. The defendants are giving bogus excuse that plaintiff signed up for a group life insurance policy which plaintiff did not. Group life insuarance?

42. Plaintiff never agreed to pay $150.75 month on a $15,000.00 life insurance policy. However, plaintiff has been paying $150.75 month.

### Fourth Claim for Relief:
### Violation of duty of loyalty

43. Plaintiff hereby restates, realleges, and incorporates herein by reference paragraphs 1 through 42 as if set forth fully in this Count.

44. Defendants had duty to tell the plaintiff when he signed up for the life insurance policy

in 1996 that the premium was going to increase to $150.75 month. Then plaintiff would not have signed up for the policy.

45. Defendants had duty of loyalty not to overcharge plaintiff and stick to the contract they signed. When the defendants started to overcharge, they violated duty of loyalty.

**Fifth Claim for Relief:**
**Negligent Misrepresentation**

46. Plaintiff hereby restates, realleges, and incorporates herein by reference paragraphs 1 through 45 as if set forth fully in this Count.

47. The defendants and plaintiff has special or privity- like relationship imposing a duty on the defendants to impart correct information (plaintiff does not have to pay $150.75/month) to the plaintiff. The defendants knew when they said plaintiff must pay $150.75 month that that they wanted plaintiff get on board on their fraudulent act and that they were conveying the wrong information.

48. Plaintiff relied on the wrong information the defendants provided.

49. Plaintiff was injured due to the false information the defendants provided.

50. The defendants committed negligent misrepresentation.

**Sixth Claim for Relief:**
**Fraudulent Intent**

51. Plaintiff hereby restates, realleges, and incorporates herein by reference paragraphs 1 through 50 as if set forth fully in this Count.

**52. The defendants knew that**: (1) plaintiff never signed up for a group life insurance policy, and (2) plaintiff never agreed to pay $150.75 month for a $15,000.00 life insurance policy.

**53.** The defendants' main goal was to collect monthly payments from plaintiff and

cancelled the policy at some point.

### Seventh Claim for Relief:
### Garden Variety Emotional Distress

54. Plaintiff hereby restates, realleges, and incorporates herein by reference paragraphs 1 through 53 as if set forth fully in this Count when plaintiff gets old (a liability).

**55. Plaintiff was unnecessarily** hurt financially due to defendants' fraudulent act.

**56.** Plaintiff has suffered and continue to suffer emotionally.

### Eighth Claim for Relief:
### Breach of Contract

57. Plaintiff hereby restates, realleges, and incorporates herein by reference paragraphs 1 through 56 as if set forth fully in this Count.

58. Plaintiff in 1996 entered into contract with MetLife for an individual life insurance policy.

59. MetLife entered into contract with plaintiff to accept $17.14 a month for a $15,000.00 life insurance policy.

60. MetLife cancelled the policy in 2017 without notifying plaintiff and without a valid reason after collecting more than $15,000.00 from plaintiff.

61. MetLife breached the contract it had with plaintiff.

62. Plaintiff never entered into agreement with MetLife to pay $150.75 for a $15,000.00 life insurance policy. It is delusional to pay $150.75/month for a $15,000.00 life insurance

### Prayer for Relief

WHEREFORE, plaintiff prays for relief as follows:

**A.** That the jury find and the Court adjudge and decree that plaintiff shall recover

compensatory damages in the sum of $800,000.00 against the defendants;

B. Punitive damages in the amount of eight hundred thousand dollars ($800,000.00);

C. Emotional damages in the sum of $300,000.00;

D. That the plaintiff has such other and further relief as the Court shall deem just and proper.

Dated: June 14, 2018     Respectfully submitted,
   Queens, N.Y.

Douglas Goonewardena

# EXHIBIT A

Prasanna Goonewardena
247-34A 77 Cres
Bellerose, NY 11426

February 6, 2017

Met Life Inc.
Mr. Steven A. Kandarian
200 Park Ave
New York, NY 10166

Re: Good faith attempt
    Acct # 00910195424

Dear Sir:

By letter dated January 13, 2017, my father Douglas Goonewardena advised you that he is giving the power of attorney to me to handle his account.

On 9/29/1999, my father entered into contract with Met Life to purchase life insurance policy. (Exhibit A, "the contract".) My father agreed to pay $20.00 monthly premium to keep the policy alive. Met Life representatives, fraudulently induced my father to purchase a *group universal life insurance* policy without informing of the details. My father's policy was cancelled stating that he failed to keep his $150.00 monthly premium. My father never agreed to pay $150.00 month for a $15,839.00 policy. This is breach of contract; negligent misrepresentation, (See *Kimmel v. Schaefer* 89 NY2d 257, 263 [1996]); fraudulent inducement; fraud (CPLR 3016 [b]) See *Lanzi v. Brooks* 43 NY2d 778, 780 (1977) and breach of fiduciary duty.

You have a law degree. You perfectly know that Met Life representatives acted in a fraudulent manner to deceive my father. The most serious charge my father can bring is Civil RICO claim. See 18 U.S.C. §§ 1961-1968 and mail & wire fraud, §§ 1341 &1343.

### My Father's Request to You

My father demand that that all contributions he made thus far, over $15,000.00 be returned to him within 30 calendar days from receipt of this good faith attempt. Met Life is a billion dollar company decided to scam my poor father. I kindly ask you to return his money in good faith. Otherwise, he will have to take legal actions in Southern District Federal court. I believe this is a fair offer to avoid legal expenses and an embarrassments.

Should you have any questions, please contact me at the above address.

Sincerely,

Prasanna Goonewardena

# EXHIBIT B

**MetLife**

MetLife
PO Box 14402
Lexington, KY 40512-4402

**Group Universal Life**

Metropolitan Life Insurance Company
Certificate No.: 91019 – 90602385487
Insured Name: Douglas Goonewardena

Mr. Douglas Goonewardena
247-34A, 77 Crescent
Bellerose NY  11426

February 22, 2017

Re:    Billing/Payment Inquiry
        Merrill Lynch Certificate - Group Universal Life Insurance Coverage

## Dear Mr. Goonewardena,

### Why we're contacting you

Per the letter dated February 6, 2017, from Mr. Prasanna Goonewardena regarding your Group Universal Life coverage as a former employee of Merrill Lynch.  The information below should help resolve your inquiry.

### What you need to know

Each item below will address the items in your letter:

1. Regarding the "representative" that Mr. Goonewardena spoke to, we do not have details on what coverages were discussed, as we do not show any record or documentation of this call.
2. Per the terms of the certificate, as well as the accounting history of this Group Universal Certificate, direct billings have been sent continually to Mr. Goonewardena since September 1999, with the first direct remit received on October 6, 1999.  Billing increases have occurred throughout the certificate based on aging, in five year age brackets. Rate information was provided at the time of enrollment. From the rates below you can see there has been no rate change since 2006:

| Age Group | Current Rates as of 4/1/06 | Rates Prior to 4/1/06 |
|---|---|---|
| Under 30 | 0.09 | 0.06 |
| 30-34 | 0.13 | 0.09 |
| 35-39 | 0.20 | 0.14 |
| 40-44 | 0.25 | 0.18 |
| 45-49 | 0.38 | 0.27 |
| 50-54 | 0.57 | 0.41 |
| 55-59 | 0.84 | 0.60 |
| 60-64 | 1.39 | 0.99 |
| 65-69 | 2.13 | 1.52 |
| 70-74 | 3.35 | 2.39 |
| 75-79 | 4.68 | 3.34 |
| 80-84 | 6.55 | 4.68 |
| 85-89 | 9.83 | 7.02 |
| 90-94 | 15.72 | 11.23 |

**Page Two**
**What you need to know – cont'd**

3. The copy of the enrollment form provided, which was signed for continuation of coverage, clearly indicates "Portable Group Universal Life Insurance Enrollment Form" at the top, as well as throughout the form itself.  Section 6 of the form states "I do elect Portable GUL Coverage and certify that I have read the materials describing the Group Universal Life Plan underwritten by MetLife as well as the Certification section, the Medical Authorization section and the Consumer Privacy Notice appearing on the reverse side of this form." The box is checked, signed and dated.
4. MetLife can assure you that per the certificate that was previously sent to you, the coverage you signed up for has been administered according to the plan.  A copy of your enrollment is enclosed for your records.
5. In our letter dated October 10, 2016, we offered a one-time courtesy reactivation of the coverage.  For this to have occurred, all back premiums needed to be paid by November 1, 2016.  A payment of $150.75 and $102.00 was received, leaving a remaining amount due of $501.00.  MetLife needed to receive the additional $501.00 no later than November 30, 2016, to re-activate coverage.  This did not occur.  Please note the coverage is currently lapsed and any additional money received will be refunded to Mr. Goonewardena.
6. MetLife has a surrender option available that does not include refunding all premium paid into a certificate.  Coverage is surrendered as of the date the form is received and any cash value as of that date is returned to the owner. MetLife offered on several occasions to work with Mr. Goonewardena to surrender, however this was not requested.

## We're here to help

Any additional correspondence about this complaint should be sent to:

Michelle Levesque, Senior Compliance Consultant
MetLife
U. S. Business Compliance
500 Schoolhouse Road
Johnstown, PA 15904
FAX #: (814) 269-8525
Email: ccrcomplaints@metlife.com

If you have further questions regarding this matter or the plan provisions, please contact me at (800) 527-5018, extension 6063. Thank you for bringing your concerns to our attention.

Sincerely,

Paula Berry
Senior Account Representative
MetLife - Life Services

# EXHIBIT C

VBG MetLife

OCT -8 1999

DO NOT WRITE IN THE ABOVE SPACE — FOR MetLife USE ONLY

| MERRILL LYNCH | Group No: 91019 | PORTABLE GROUP UNIVERSAL LIFE INSURANCE ENROLLMENT FORM |

EMPLOYEE NAME Last: GOONEWARDENA First: DOUGLAS Middle: E. W.

EMPLOYEE SOCIAL SECURITY NO: 088 58 5424  SEX (M/F): M

ADDRESS: 83-07, 250 STREET

EMPLOYEE HIRE DATE (Mo/Yr): 07/11/1'/30  ANNUAL SALARY: 

BELLEROSE N.Y. 11426

DAYTIME PHONE: (718) 343-2165

EMPLOYER LOCATION (City, State, Zip Code): WORLD FINCL CTR(SOUTH) NEW YORK NY10080

COVERAGE AMOUNT AUTHORIZATION/ADJUSTMENT: $15,839.32

TERMINATION DATE (Mo/Day/Yr): 08/81/99

### Section 1 — Employee Coverage
Refer to your Enrollment Kit, or Call MetLife at 1-800-523-2894

A. Select the coverage amount that you desire. Your choice is from a minimum of $10,000 to a maximum of $1,000,000 in $10,000 increments. If you elect a coverage amount that exceeds the "amount available to port," on the enclosed MetLife Group Life Worksheet, please complete Section 4-Medical Information; This information is subject to review and approval by our Medical Department.

Coverage Amount Chosen $ 15,339.32

B. Monthly Premium (see rate sheet)  Monthly Premium $

C. Optional Monthly Contribution to the Cash Accumulation Fund  Monthly Amount $
   For cash accumulation projections call 1-800-523-2894.

D. Accidental Death Benefit - $.05/$1,000 of coverage
   I would like the Accidental Death coverage equal to my GUL Coverage: ☑ Yes ☐ No  Premium
   Coverage Amount Chosen $ 15,339.32  Total

E. Total Monthly Cost of Employee Coverage (B+C+D)  Total $

### Section 2 — Dependent Coverage
Refer to your Enrollment Kit, or Call MetLife at 1-800-523-2894

SPOUSE NAME Last: First: MI:  SPOUSE BIRTH DATE (Mo/Day/Yr):  SOCIAL SECURITY NO:

F. SPOUSE GUL COVERAGE: Select the coverage amount that you desire.
   Your choice is from a minimum of $10,000 to a maximum of $250,000 in $10,000 increments.
   Coverage Amount Chosen $

G. Optional Monthly Contribution to the Cash Accumulation Fund  Monthly Amount $
   For cash accumulation projections call 1-800-523-2894.

H. Accidental Death Benefit $.05/$1,000 of coverage
   I would like the Accidental Death Coverage equal to my GUL coverage: ☐ Yes ☐ No  Premium
   Coverage Amount Chosen $  Total

I. CHILD(REN) COVERAGE: Check box if coverage is desired.
   ☐ $10,000   ☐ $20,000  Child(ren) Premium
   NOTE: Each child is covered for the same amount regardless of number.

J. Total Monthly Cost of Dependent Coverage (F + G + H + I)  Total $

### Section 3 — Total Expected Monthly Premium
Total Monthly Premium Amount
(Cost of Employee Coverage Plus Dependent Coverage) (E + J)  Total Expected Monthly Premium $

IMPORTANT  ☞  IF YOU HAVE ANY QUESTIONS CALL TOLL-FREE 1-800-523-2894 FROM 8 A.M. TO 8 P.M. EASTERN TIME

### Section 4 — Medical Information

All Enrollees must answer the following question:
Has any person for whom coverage is being requested been hospitalized during the preceding 90 days?  Employee ☐ Yes ☐ No  Spouse ☐ Yes ☐ No  Child(ren) ☐ Yes ☐ No

If you answered "Yes" to the above question for you or any of your dependents, you must also complete and attach a Statement of Good Health form (G11421-S-RK) for that individual.

EMPLOYEE COVERAGE: Please answer questions "1" through "5" if you elect a coverage amount that exceeds the "amount available to port" on the enclosed MetLife Group Life Worksheet.

SPOUSE/CHILD(REN) COVERAGE: If you are adding or increasing dependent coverage, for dependents who were previously eligible but not enrolled, you must complete a full Statement of Health form (G11421-S-RK). Your coverage will be limited to the non-medical issue amount until you receive notice that MetLife has approved your request for greater amounts of coverage.

1. Has any person for whom coverage is being requested ever received even received treatment from or been told by any physician or other practitioner that they had or have/  Employee  Spouse  Child(ren)
   a) chest pain or heart trouble?  ☐ Yes ☐ No  ☐ Yes ☐ No  ☐ Yes ☐ No
   b) high blood pressure, stroke or circulatory disorder?  ☐ Yes ☐ No  ☐ Yes ☐ No  ☐ Yes ☐ No
   c) cancer or tumors?  ☐ Yes ☐ No  ☐ Yes ☐ No  ☐ Yes ☐ No
   d) anemia, leukemia or other blood disorder?  ☐ Yes ☐ No  ☐ Yes ☐ No  ☐ Yes ☐ No

2. Has any person for whom coverage is being requested ever received treatment or been told by a medical professional they had or have AIDS or ARC?  ☐ Yes ☐ No  ☐ Yes ☐ No  ☐ Yes ☐ No

3. Has any person for whom coverage is being requested had an application for life or health insurance declined, postponed, withdrawn, or issued other than as applied for?  ☐ Yes ☐ No  ☐ Yes ☐ No  ☐ Yes ☐ No

4. On the date of enrollment is any person for whom coverage is being requested receiving or entitled to receive any benefit due to sickness or injury (other than medical expense benefits) from any source?  ☐ Yes ☐ No  ☐ Yes ☐ No  ☐ Yes ☐ No

5. Employee: Height _____ Weight _____

If you answered "Yes" to any of the above questions, you must also complete and attach a Statement of Health form (G11421-S-RK). MetLife will review your answers to these questions and your medical history before making a decision on your coverage.

### Section 5 — Beneficiary For Employee
No white outs or cross outs allowed in this section
Please See Reverse Side of This Form For Additional Information Concerning Beneficiaries

☑ I Designate as my Beneficiary:  ☐ My Designation of Beneficiary is on a separate form.

Name: BERNARD. W. GOONEWARDENA  Date of Birth: 4/19/33  Relationship to Employee: BROTHER

Address: APT # A7, 5 TUDOR CITY PLACE, NEW YORK NY 10017.

If the Beneficiary dies before me, I designate as contingent beneficiary:

Name: PRASANNA GOONEWARDENA  Date of Birth: 01/08/69  Relationship to Employee: SON

Address: 83-07, 250 ST. BELLROSE, NY 11426.

• If there is more than one beneficiary, or more than one contingent beneficiary, they will share the death benefit equally, or will be paid to the survivor.
• I RESERVE the right to change this designation at any time.

Employee Signature: Dr. Goonewardena  Date: 09/29/99

### Section 6 — Election To — OR — Election Not To Participate

IMPORTANT — One of the Boxes Below Must Be Checked.
☑ I do elect Portable GUL Coverage and certify that I have read the materials describing the Portable Life Plan underwritten by MetLife as well as the Certification section, the Medical Authorization section and the Consumer Privacy Notice appearing on the reverse side of this form.

☐ I do not elect Portable GUL Coverage. I understand that evidence of good health will be required if I enroll after the initial enrollment period.

EMPLOYEE SIGNATURE X Dr. Goonewardena  DATE 09/29/99.

SPOUSE'S SIGNATURE X
(if coverage is requested)  DATE

METLIFE — PORTABLE GROUP PRODUCTS, P.O. BOX 7242, CHICAGO, IL 60678-7242

WHITE COPY — METLIFE   YELLOW COPY — METLIFE   PINK COPY — EMPLOYEE: THIS FORM SHOULD BE FILED ALONG WITH YOUR CERTIFICATE IN A SAFE PLACE

©2000 L/00046GA2 (exp0000) MLIC-LD

10 1 9 0 1 2 7 0 6   MAY - 8 1999   VBG MetLife

**DO NOT WRITE IN THE ABOVE SPACE — FOR MetLife USE ONLY**

MERRILL LYNCH   Group No. 91019   **PORTABLE GROUP UNIVERSAL LIFE INSURANCE ENROLLMENT FORM**

| EMPLOYEE NAME   Last | First | Middle | EMPLOYEE SOCIAL SECURITY NO. | SEX (M/F) |
|---|---|---|---|---|
| GOONEWARDENA, DOUGLAS | E.W. | | 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 | M |

ADDRESS   No.   Street: 83-07, 250 STREET
CITY: BELLEROSE   STATE: N.Y.   ZIP CODE: 11426
DAYTIME PHONE: (718) 343-2165

EMPLOYEE BIRTH DATE (Mo/Dy/Yr): 07/14/30
ANNUAL SALARY: $15,839.32
EMPLOYEE NEAREST AGE/TERMINATION OF RETIREMENT
EMPLOYER LOCATION (City, State, Zip Code): WORLD FINCL CTR (SOUTHTOWER)   NEW YORK, NY 10080
TERMINATION/RETIREMENT DATE: 08/31/99

**Section 1**
*Employee Coverage*
Refer to your Enrollment Kit, or Call MetLife at 1-800-523-2894

A. Select the coverage amount that you desire. Your choice is from a minimum of $10,000 to a maximum of $1,000,000 in $10,000 increments. If you elect a coverage amount that exceeds the "amount available to port," on the enclosed MetLife Portable Life Worksheet, please complete Section 4 Medical Information. This information is subject to review and approval by our Medical Department.
Coverage Amount Chosen $ 15,339.32
B. Monthly Premium (see rate sheet)   Monthly Premium $
C. Optional Monthly Contribution to the Cash Accumulation Fund   Monthly Premium $
for cash accumulation projections call 1-800-523-2894.
D. Accidental Death Benefit - $.05/$1,000 of coverage
I would like Accidental Death coverage equal to my GUL Coverage:   ☐ Yes ☐ No   Premium $
Coverage Amount Chosen $ 15,339.32
E. Total Monthly Cost of Employee Coverage (B+C+D)   $

**Section 2**
*Dependent Coverage*
Refer to your Enrollment Kit, or Call MetLife at 1-800-523-2894

| SPOUSE NAME   Last | First | Middle | SPOUSE BIRTH DATE (Mo/Dy/Yr) | SOCIAL SECURITY NO. |
|---|---|---|---|---|

F. SPOUSE GUL COVERAGE: Select the coverage amount that you desire. Your choice is from a minimum of $10,000 to a maximum of $250,000 in $10,000 increments. Coverage Amount Chosen $
G. Optional Monthly Contribution to the Cash Accumulation Fund   Spouse Premium $
for cash accumulation projections call 1-800-523-2894.
H. Accidental Death Benefit $.05/$1,000 of coverage
I would like Accidental Death Coverage equal to my GUL coverage: ☐ Yes ☐ No   Premium $
Coverage Amount Chosen $
I. CHILD(REN) COVERAGE: Check box if coverage is desired.
☐ $10,000   ☐ $20,000   Child(ren) Premium $
NOTE: Each child is covered for the same amount regardless of number.
J. Total Monthly Cost of Dependent Coverage (F + G + H I)   Total $

**Section 3**
*Total Expected Monthly Premium*

Total Monthly Premium Amount
(Cost of Employee Coverage Plus Dependent Coverage) (E + J)   Total Expected Monthly Premium $
☞ IF YOU HAVE ANY QUESTIONS CALL TOLL-FREE 1-800-523-2894 FROM 8 A.M. TO 8 P.M. EASTERN TIME.

**IMPORTANT** ☞
All Enrollees must answer the following question:
Has any person for whom coverage is being requested been hospitalized during the preceding 90 days?   Employee ☐ Yes ☐ No   Spouse ☐ Yes ☐ No   Child(ren) ☐ Yes ☐ No
If you answered "Yes" to the above question for you or any of your dependent(s), you must also complete and attach a Statement of Health form (G11421-S-RK) for that individual.

**Section 4**
*Medical Information*

EMPLOYEE COVERAGE: Please answer questions "1" through "5" if you elect a coverage amount that exceeds the "amount available to port" on the enclosed MetLife Portable Life Worksheet.
SPOUSE/CHILD(REN) COVERAGE: If you are adding or increasing dependent(s) coverage, for dependents who were previously eligible but not enrolled, you must complete a full Statement of Health form (G11421-S-RK). Your coverage will be limited to the non-medical issue amount until you receive notice that MetLife has approved your request for greater amounts of coverage.

1. Has any person for whom coverage is being requested ever received treatment from or been told by any physician or other practitioner that they had or have:   Employee   Spouse   Child(ren)
a) chest pain or heart trouble?   ☐ Yes ☐ No   ☐ Yes ☐ No   ☐ Yes ☐ No
b) high blood pressure, stroke or circulatory disorder?   ☐ Yes ☐ No   ☐ Yes ☐ No   ☐ Yes ☐ No
c) cancer or tumors?   ☐ Yes ☐ No   ☐ Yes ☐ No   ☐ Yes ☐ No
d) anemia, leukemia or other blood disorder?   ☐ Yes ☐ No   ☐ Yes ☐ No   ☐ Yes ☐ No
2. Has any person for whom coverage is being requested ever received treatment for or been told by a medical professional they had or have AIDS or ARC?   ☐ Yes ☐ No   ☐ Yes ☐ No   ☐ Yes ☐ No
3. Has any person for whom coverage is being requested had an application for life or health insurance declined, postponed, withdrawn, or issued other than as applied for?   ☐ Yes ☐ No   ☐ Yes ☐ No   ☐ Yes ☐ No
4. On the date of enrollment is any person for whom coverage is being requested receiving or entitled to receive any benefit due to sickness or injury (other than medical expense benefits) from any source?   ☐ Yes ☐ No   ☐ Yes ☐ No
5. Employee: Height   Weight   Spouse: Height   Weight
If you answered "Yes" to any of the above questions, you must also complete and attach a Statement of Health form (G11421-S-RK). MetLife will review your answers to the above questions and any additional information you provide. MetLife reserves the right to require completed medical evidence. Any decision to issue coverage will not take into account your health status and claims history.

**Section 5**
*Beneficiary For Employee*
No white-outs or cross-outs allowed in this section.
**Please See Reverse Side of This Form for Additional Information Concerning Beneficiaries**

Designation of Beneficiary (The Dependent Life Benefits are Payable to the Employee Only)
☑ I Designate as my Beneficiary:   ☐ My Designation of Beneficiary is on a separate form.
Name: BERNARD W. GOONEWARDENA   Date of Birth: 4/19/37   Relationship to Employee: BROTHER
Address: APT # A7, 5 TUDOR CITY PLACE, NEW YORK NY 10017
If the Beneficiary dies before me, I designate as contingent beneficiary:
Name: PRASANNA GOONEWARDENA   Date of Birth: 01/08/69   Relationship to Employee: SON
Address: 83-07, 250 ST. BELLROSE, NY 11426
• If there is more than one beneficiary, or more than one contingent beneficiary, they will share the death benefits equally, or as will be paid to the survivor.
• I RESERVE the right to change this designation at any time.
Employee Signature X _Dr. Goonewardena_   Date 09/29/99

**Section 6**
*Election To — OR — Election Not To Participate*

IMPORTANT — One of the Boxes Below Must Be Checked:
☑ I do elect Portable GUL Coverage and certify that I have read the materials describing the Group Universal Life Plan underwritten by MetLife as well as the Certification section, the Medical Authorization section and the Customer Privacy Notice appearing on the reverse side of this form.
☐ I do not elect Portable GUL Coverage and understand that evidence of good health will be requested if I enroll after the initial enrollment period.
• **EMPLOYEE SIGNATURE** X _Dr. Goonewardena_   DATE X 09/29/99
• **SPOUSE'S SIGNATURE** X _____   DATE X _____
(if coverage is requested)

**METLIFE — PORTABLE GROUP PRODUCTS, P.O. BOX 72421, CHICAGO, IL 60678-2421**

WHITE COPY — METLIFE   YELLOW COPY — METLIFE   PINK COPY — EMPLOYEE: THIS FORM SHOULD BE FILED ALONG WITH YOUR CERTIFICATE IN A SAFE PLACE
©2000 L99086GA2 (exp0502) MLIC-LD